IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DEREK JOSEPH MOORE,

        Plaintiff,

        v.                        Civil Action No. 2:11-cv-17

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.


**REPORT AND RECOMMENDATION THAT
CLAIMANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED**

**I. Introduction**

A.    <u>Background</u>

      Plaintiff, Derek Joseph Moore (hereinafter "Claimant"), filed his Complaint on March 4, 2011 seeking judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (hereinafter "Commissioner").[1] Commissioner filed his Answer on May 12, 2011.[2] Claimant filed his Motion for Summary Judgment on June 8, 2011.[3] Commissioner filed his Motion for Summary Judgment on July 6, 2011.[4]

B.    <u>The Pleadings</u>

      1.      Plaintiff's Motion for Judgment on the Pleadings & Memorandum in Support

      2.      Defendant's Motion for Summary Judgment & Memorandum in Support

---

[1] Dkt. No. 1.

[2] Dkt. No. 5.

[3] Dkt. No. 8.

[4] Dkt. No. 10.

C.    Recommendation

1.    Claimant's Motion for Summary Judgment be **<u>DENIED</u>** because the ALJ properly evaluated the treating physician's reports and Claimant's mental health records, correctly assessed Claimant's credibility and provided for Claimant's credible limitations in the VE hypothetical.

2.    Commissioner's Motion for Summary Judgment be **<u>GRANTED</u>** for the same reasons.

## II.  Facts

A.    Procedural History

Claimant filed an application for Disability Insurance Benefits (hereinafter "DIB") on March 27, 2007 alleging disability due to post-traumatic stress disorder ("PTSD"), irritable bowel syndrome and degenerative arthritis. (Tr. 74, 76).  The application was initially denied on July 18, 2007 and on reconsideration on October 10, 2007. (Tr. 81).  Claimant requested a hearing before an Administrative Law Judge (hereinafter "ALJ") and received a hearing on December 8, 2008 in Cumberland, Maryland. (Tr. 29, 95).

On March 9, 2009, the ALJ issued a decision adverse to Claimant finding that Claimant was not under a disability within the meaning of the Social Security Act from April 15, 2002 through December 31, 2007. (Tr. 9).  Claimant requested review by the Appeals Council but such review was denied. (Tr. 1).  Claimant filed this action, which proceeded as set forth above, having exhausted his administrative remedies.

B.    Personal History

Claimant was born on June 16, 1970, and was thirty-one (31) years old on the onset date

of the alleged disability and was thirty-eight (38) years old as of the date of the ALJ's decision.

(Tr. 18, 73).  Under the regulations, Claimant was considered a "younger individual" and,

generally, one whose age will not "seriously affect [Claimant's] ability to adjust to other work."

20 C.F.R. §§ 404.15639(c), 416.963(c).  Claimant has a high school diploma and has special job

training in communications maintenance. (Tr. 191).  Claimant has prior work experience as a

chicken packer, laborer and as an aid in residential services. (Tr. 175).

C.    Medical History

On April 9, 2002, Claimant underwent a CT of his head. (Tr. 232).  The impression found

no evidence for acute brain parenchymal process, bilateral maxillary and ethmoid sinusitis, no

distinct maxillary or ethmoid bony wall disruption, and zygomas and orbital walls intact. (Tr.

232).

On April 10, 2002, Claimant underwent a C-Spine examination. (Tr. 230).  The findings

were as follows: "C7 is partially obscured. The upper 6 vertebrae demonstrate no definite

evidence for focal fracture. There is some straightening of lordosis consistent with spasm." (Tr.

230).  The examination revealed no evidence for fracture but found some narrowing of the

supraglottic airway likely reflecting phase of respiration artifact.(Tr. 231).

On November 18, 2002, Claimant's mental health was assessed. (Tr. 248).  Claimant's

presenting psycho-social focus was listed as intrusive thoughts, depression, has severe seizures.

(Tr. 248).  Claimant had an anxious manner, average intelligence, orientation as to

time/place/person, an impaired short-term memory function, a flat/blunted affect, tense motor

activity and fair judgment. (Tr. 248). Claimant was treated for a seizure disorder since September 2000. (Tr. 249). Claimant smokes 1/2-1 pack of cigarettes per day. (Tr. 249). Claimant stated he enlisted in the Army in July of 1989, was deployed to Saudi Arabi in August of 1990 and discharged from active duty in August of 1992. (Tr. 251). Claimant stated that he "feels he possibly–probably did inflict enemy casualties." (Tr. 252). Claimant's good friend was killed in action while riding in a fighting vehicle. (Tr. 252). Claimant stated he cannot get the memories of his military experience out of his mind. (Tr. 252).

On April 9, 2006, Claimant was seen at Grant Memorial Hospital Emergency Department. (Tr. 227). Claimant complained of a headache and had an abrasion the left side of his face. (Tr. 227). Claimant reported to the physician that he had a seizure at work and that the last thing he remembered was sitting on a chair there. (Tr. 227). Claimant was diagnosed with a seizure. (Tr. 227).

On May 20, 2003, Dr. Spencer Deakin provided a psychosocial evaluation of Claimant. (Tr. 256). Dr. Deakin opined that Claimant experiences "symptoms consistent with a PTSD diagnosis; intrusive thinking, depression, anxiety, anger, hyper vigilance, sleep disturbances and survival guilt. (Tr. 257). Dr. Deakin noted Claimant's "medications appear to be helpful and that Claimant "does benefit from the supportive nature of counseling." (Tr. 257).

On June 17, 2003, Claimant was examined by Dr. Eugene Benjamin. (Tr. 288). Claimant was noted to have had a history of PTSD but had a normal neurologic examination on March 3, 2003. (Tr. 289). Dr. Benjamin stated: "In my opinion, there is no evidence of any predisposing disease, illness, event or injury suffered by the [Claimant] while in the service that predisposes or causes his current epileptic condition." (Tr. 289). Claimant was also diagnosed with: "1)

retropatellar pain syndrome especially of the left knee; 2) there is no evidence of cervical spine injury while [Claimant] was on active duty. It is more likely related to injuries since [Claimant] started to have seizure disorder; 3) Left shoulder tendonitis and left lateral epicondylitis are likely as not related to his employment in the chicken plant; 4) [Claimant's] other joint pains are as likely as not related to general deconditioning. There is no evidence of undiagnosed illness." (Tr. 290).

On December 6, 2004, Claimant was examined by Dr. Garcia Santos. (Tr. 286). Claimant reported that he suffered from progressive diarrhea and abdominal pain but that he has been treated with Imodium and Lomotil which helps the diarrhea about 20% of the time. (Tr. 287). Additionally, Claimant stated he also changed his diet to high fiber and this "seemed to help." (Tr. 287). Claimant reported having chronic knee pain that has progressively gotten worse. (Tr. 287). Claimant reported that standing for about 15 minutes makes the pain worse and also walking for about half a mile also exacerbates the pain. (Tr. 287). Claimant denies any swelling but admits to stiffness, locking and fatigability. (Tr. 287). Upon examination of Claimant's knee, "no varus or valgus deformity" was found. (Tr. 287). "Pain was noted on manipulation of the joint and on joint motion [but] there was no sensory deficit to pin prick and touch." (Tr. 287). Claimant was diagnosed with: 1) degenerative arthritis, left knee, with limitation of motion; 2) degenerative arthritis, right knee, with minimal limitation of motion. (Tr. 288).

On December 16, 2004, Dr. Andrew Meyer completed a review examination for Claimant's PTSD. (Tr. 284). Claimant described to Dr. Meyer of viewing "numerous enemy bodies" and also described "going past burned-out enemy vehicles and seeing bodies inside."

(Tr. 285). Claimant reported no hobbies or activities and isolates himself. (Tr. 285). Dr. Meyer diagnosed Claimant with PTSD, chronic, severe. (Tr. 286). Claimant's global assessment of functioning is 35, based on continuous severe symptoms of PTSD. (Tr. 286). Dr. Meyer stated: "It is felt that due to the [Claimant's] history that [Claimant] is both totally and permanently disabled and unemployable." (Tr. 286).

On February 16, 2005, Jerome K. Beightol, LCSW, opined that Claimant "does not seem to be a likely candidate to return to gainful employment due to his ongoing PTSD and Irritable Bowel." (Tr. 258). Mr. Beightol also stated Claimant's "anxiety is often high which in turn increases his physical problems." (Tr. 258). On several occasions, Claimant reported having nightmares, flashbacks, hyper vigilance, dissociative episodes, memory loss, depression, sleep disturbances, inability to deal with minor stress, panic attacks, survivor guilt, low self esteem, intrusive thoughts, exaggerated startle response and anxiety. (Tr. 258, 260-272).

On October 14, 2005, Claimant was seen for a follow up to the psychiatry consult. (Tr. 314). Claimant stated his seizures were under control with medications but that his PTSD symptoms were getting worse and his IBS was not responding to treatment. (Tr. 314). Claimant was started on Celexa and was explained about the effects and side effects of his medications. (Tr. 314). Claimant was advised to continue counseling and Claimant's GAF score was 45. (Tr. 314).

On August 10, 2006, Ms. Tracey L. Cosner-Shepherd evaluated Claimant. (Tr. 164). Claimant reported to Ms. Cosner-Shepherd that he has "irritable bowel...borderline Crohn's...plus I'm PTSD." (Tr. 165). Claimant stated he "developed some anxiety problems...being around people" and that he experiences panic attacks in social situations. (Tr.

165). Claimant also stated to Ms. Cosner-Shepherd that he sometimes gets disoriented when he is caught up thinking about service issues. (Tr. 165). Claimant reported having nightmares regularly and stated he often does not finish what he starts. (Tr. 165). Claimant also reported suffering from IBS and "is borderline for Crohn's disease." (Tr. 166). Claimant says he has degenerative arthritis in his knees and that he has difficulty walking, climbing and bending. (Tr. 166). Claimant stated he drinks every once in a while but denied any regular use in the last four years. (Tr. 166). Claimant also admitted to using marijuana in the past but stated he had not used it in the last four to five years. (Tr. 166). Ms. Shepherd's objective findings noted that Claimant had "poor coping skills, history of substance abuse, anxiety, depression...impaired memory and concentration." (Tr. 169).

On August 16, 2006, Dr. Joseph A. Shaver completed a psychiatric review technique and a mental residual functional capacity assessment of Claimant. (Tr. 348). Claimant was noted to have the following: 1) organic mental disorders; 2) affective disorders; 3) anxiety-related disorders; and 4) substance addiction disorders. (Tr. 348). Claimant's functional limitations are as follows: 1) mild restriction of activities of daily living; 2) mild difficulties in maintaining social functioning; 3) moderate difficulties in maintaining concentration, persistence or pace; 4) no limitations in episodes of decompensation. (Tr. 358). Claimant's daily activities were noted as "yard work monthly and grocery shops, otherwise he does not assist with any household chores." (Tr. 360). Claimant "does attend church 1-2 x week, eats out occasionally, and visits with friends and family a couple x week." (Tr. 360). Claimant's understanding and memory were not significantly limited except for Claimant's ability to understand and remember detailed instructions which was moderately limited. (Tr. 362). Claimant had only moderate to little

limitations in his sustained concentration and persistence. (Tr. 362). Claimant's social interaction and adaptation was not significantly limited. (Tr. 363). Dr. Shaver reported that "[i]t is believed that Claimant retains the mental capacity to operate in routine, low stress, work situations that require only two to three step operations." (Tr. 364). Claimant's thought process, immediate memory, insight, pace and persistence fell essentially within normal limits. (Tr. 364).

On August 17, 2006, Dr. Cindy Osborne completed a physical residual functional capacity assessment of Claimant. (Tr. 366). Claimant's primary diagnosis was arthritis knees and IBS and his secondary diagnosis was a seizure disorder. (Tr. 366). Claimant's exertional limitations were as follows: 1) can occasionally lift and/or carry 50 pounds; 2) can frequently lift and/or carry 25 pounds; 3) can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; 4) can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; 5) can push and/or pull unlimited. (Tr. 367). Claimant's postural limitations were as follows: 1) can frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl; 2) can never climb ladders, ropes or scaffolds. (Tr. 368). No manipulative, visual or communicative limitations were established. (Tr. 369-370). Claimant's environmental limitations are as follows: 1) unlimited exposure to extreme cold/heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases and poor ventilation. (Tr. 370). Claimant must avoid all exposure to hazards. (Tr. 370). Dr. Osborne found Claimant's complaints to be "partially credible and support decrease in RFC to medium with height and hazard limitations." (Tr. 371). Claimant "should be capable of medium exertional level." (Tr. 372).

On June 21, 2007, Claimant was examined by Dr. Stephen B. Nutter. (Tr. 521). Claimant complained of pain in his back which radiates down his left leg and neck. (Tr. 522). Claimant

ambulates with a normal gait and does not require a handheld assistive device. (Tr. 522). Claimant's impression was as follows: 1) Irritable bowel syndrome; 2) degenerative arthritis and carpal tunnel syndrome and 3) chronic cervical and lumbar strain but no evidence of radiculopathy. (Tr. 524). Claimant's reflexes and muscle strength testing were normal. (Tr. 524).

On June 25, 2007, Ms. Tracy L. Cosner-Shepherd assessed Claimant. (Tr. 527). Claimant stated "the biggest problem [Claimant] has is PTSD...problems with remembering." (Tr. 527-28). Ms. Shepherd's objective findings were as follows: "PTSD symptoms, such as flashbacks; other anxious features; mild depressive features; poor coping skills, with history of substance abuse; some family dysfunction; history of some legal difficulties; impaired memory skills." (Tr. 530). Claimant's prognosis was noted to be "fair" and that Claimant's social functioning was within normal limits during the evaluation. (Tr. 531). Claimant's concentration, persistence, pace, immediate memory and remote memory were noted to be "within normal limits." (Tr. 531). Claimant's recent memory was "markedly deficient based on zero out of four words recalled after 30 minutes." (Tr. 531).

A vocational analysis of Claimant was completed on July 13, 2007. Claimant's physical assessment was analyzed to be at a "medium" exertional level with postural restrictions. (Tr. 193). Claimant's mental assessment was analyzed at "non-severe" with no restrictions. (Tr. 193). Claimant was assessed as being able to perform past work as Claimant described it and as described in the national economy. (Tr. 193).

On July 13, 2007, Mr. Karl G. Hursey completed a psychiatric review technique of Claimant. (Tr. 534). Claimant's medical dispositions were found to be not severe. (Tr. 534).

Claimant was found to have a medically determinable impairment of depressive d/o NOS per CE but that it does not precisely satisfy the diagnostic criteria. (Tr. 537). Claimant was found to have anxiety as evidenced by a recurrent and intrusive recollections of a traumatic experience. (Tr. 539). Claimant's functional limitations are as follows: 1) mild restriction of activities of daily living; 2) no difficulties in maintaining social functioning; 3) no difficulties in maintaining concentration, persistence, or pace; 4) no episodes of decompensation. (Tr. 544). Claimant was found to be generally credible but "[Claimant's] recent memory function is not consistent with other measures of cognition including remote memory, concentration, nor with social interaction." (Tr. 546).

On July 30, 2007, Dr. Stephen Crossland completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. 548). Dr. Crossland found Claimant's exertional limitations to be as follows: 1) can occasionally lift and/or carry less than 10 pounds; 2) can frequently lift and/or carry less than 10 pounds. (Tr. 548). Dr. Crossland found Claimant's standing and walking were affected by Claimant's impairments in that Claimant can only stand and/or walk less than 2 hours in an 8-hour workday. (Tr. 548). Claimant must periodically alternate sitting and standing to relieve pain or discomfort. (Tr. 549). Claimant is also limited in his pushing and pulling in both his upper and lower extremities. (Tr. 549). Claimant's postural limitations were as follows: 1) can never climb ramps/stairs/ladders/ropes/scaffolds; balance, kneel, crouch, crawl or stoop. (Tr. 549). Claimant's environmental limitations were as follows: 1) can have limited contact with temperature extremes, noise, dust, vibration, humidity/wetness, hazards and fumes/odors/chemicals/gas. (Tr. 550).

On August 2, 2007, LCSW Jerome K. Beightol completed a mental impairment questionnaire for Claimant. (Tr. 551). Claimant was noted to have PTSD, grief over war traumas and loss of several friends. (Tr. 551). Claimant's symptoms were as follows: 1) poor memory; 2) social withdrawal or isolation; 3) pervasive loss of interests; 4) difficulty thinking or concentrating; 5) sleep disturbance; 6) decreased energy, intrusive recollections of a traumatic experience and 7) generalized persistent anxiety. (Tr. 551). Claimant's prognosis was assessed as "poor" and Claimant has been "totally disabled since July 2002." (Tr. 552). Claimant was noted as "not able to work" and Claimant's mental abilities to do unskilled work was assessed as "fair." (Tr. 553). Claimant's mental abilities and aptitudes needed to do semiskilled and skilled work was assessed as "poor or none." (Tr. 554). Claimant's mental abilities and aptitudes needed to do particular types of jobs was assessed as between fair and poor or none. (Tr. 554).

On October 9, 2007, Dr. Cindy Osborne completed a physical residual functional capacity assessment of Claimant. (Tr. 624). Claimant's primary and secondary diagnoses were a seizure disorder and chronic knee and back strain, respectively. (Tr. 624). Claimant's exertional limitations were as follows: 1) can occasionally lift and/or carry 50 pounds; 2) can frequently lift and/or carry 25 pounds; 3) can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; 4) can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; can push and/or pull unlimited, other than as shown for lift and/or carry. (Tr. 625). Claimant's postural limitations were as follows: 1) can frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl; 2) can never climb ladders, ropes or scaffolds. (Tr. 626). Claimant's "seizure disorder under treatment with Tegretol." (Tr. 626). No manipulative, visual or communicative limitations were established. (Tr. 627-28). Claimant's environmental

limitations were as follows: 1) can have unlimited exposure to extreme cold, heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases and poor ventilation; 2) must avoid all exposure to hazards. (Tr. 628). Dr. Osborne noted "[f]indings do not support degree of limitations as indicated. Should be able to function at medium level...." (Tr. 630).

On October 9, 2007, Dr. Frank Roman completed a psychiatric review technique of Claimant. (Tr. 632). Claimant was noted to have symptoms of an affective disorder. Specifically, a disturbance of mood, accompanied by a full or partial manic or depressive syndrome as evidenced by anhedonia, decreased energy, feelings of guilt and difficulty concentrating or thinking. (Tr. 635). Claimant was also found to have anxiety-related disorders in the form of anxiety. Specifically, Claimant had a persistent irrational fear of a specific object, activity or situation which resulted in a compelling desire to avoid the dreaded object, activity or situation. (Tr. 637). Claimant's functional limitations were as follows: 1) mild restriction of activities of daily living; 2) moderate difficulties in maintaining social functioning; 3) difficulties in maintaining concentration, persistence or pace; and 4) no episodes of decompensation. (Tr. 642). Claimant was found to be credible and his symptoms were "consistent with his history." (Tr. 644). Dr. Roman stated that the "MER suggests [Claimant] is able to follow routine work duties in a low stress setting not involving frequent contact with the public." (Tr. 648).

A vocational analysis of Claimant was completed by Stephanie Eddy on October 10, 2007. (Tr. 197). Claimant's physical assessment was analyzed to be at a "medium" exertional level with postural restrictions. (Tr. 197). Claimant's mental assessment was analyzed as allowing "only basic tasks." (Tr. 197). Claimant was assessed as not being capable of performing past work as Claimant described it nor as it is described in the national economy. (Tr.

197).  Claimant, however, was capable of performing other work. (Tr. 197).  Ms. Eddy stated "[t]he medical records suggest that he is able to follow routine work duties in a low stress setting not involving frequent contact with the public." (Tr. 197).  Additionally, Ms. Eddy provided the following three jobs Claimant would be capable of performing: 1) sample clerk, paper; 2) coin-counter-and-wrapper; 3) lumbar scaler. (Tr. 197).

D.     Testimonial Evidence

Testimony was taken at the hearing held on December 8, 2008.  The following portions of the testimony are relevant to the disposition of the case:

Claimant testified at the hearing that he is married and has three daughters between the ages of four and eleven years old. (Tr. 31-32).  Claimant stated he had a driver's license and, in a week, he drives approximately 30 to 40 miles. (Tr. 32).  Claimant indicated he smoked about a pack a day but does not drink alcohol. (Tr. 32).  While in the military, Claimant underwent a brief alcohol treatment in approximately 1990 or 1991 and has had two DUIs. (Tr. 32-33).

Regarding his daily activities, Claimant testified that he does not do very much shopping. (Tr. 33).  Claimant testified that he shops if he needs "to pick up some groceries, bread, milk stuff like that." (Tr. 34).  Claimant does not do very much cleaning around the house but "every once in a while [Claimant] might pick up clothes." (Tr. 34).  Claimant does not do any laundry but does help get his children up and ready for school on a daily basis. (Tr. 34).  Claimant cared for his four-year-old daughter prior to her starting school. (Tr. 34).  Claimant stated he was active in his church and does "as much as possible." (Tr. 34).  Claimant goes to church every week and participates in the Wednesday night church meetings to "help out with the kids." (Tr. 34-35).  Claimant enjoys hunting, fishing and football. (Tr. 35).  Claimant does not get any form

of exercise but has been to physical therapy. (Tr. 36).

In terms of Claimant's physical abilities, Claimant testified he has trouble lifting and carrying things. (Tr. 35). Claimant gets light-headed and dizzy when he bends over. (Tr. 35). At the time of the hearing, Claimant had last suffered a seizure approximately a year and a half ago. (Tr. 35). Claimant testified he has "a tendency to be a little drowsy especially when [Claimant] take[s] [his] pain medications." (Tr. 36). Claimant has not undergone surgery but does have stabbing pain all of the way down Claimant's leg when he sits for too long. (Tr. 41-42). Claimant testified that he eases this pain by standing up but that if Claimant is standing too long, Claimant also experiences this type of pain. (Tr. 42).

Claimant also testified he experiences irritable bowel syndrome ("IBS") that keeps Claimant "in the bathroom for the better part of every morning." (Tr. 42). Claimant estimates the number of times he goes to the bathroom, within the first couple of hours of being up, to be approximately ten (10) times. (Tr. 42). Claimant takes Atropine everyday for his IBS and he testified the medicine "slows it down." (Tr. 43). Claimant testified he also experiences hip pain, which started in 2001 and Claimant believes this pain is "still getting worse." (Tr. 44).

Claimant previously was enlisted in the Army as a radio troubleshooter. (Tr. 37). While Claimant was enlisted, he hurt his left knee during a PT run that "hasn't been right since." (Tr. 37). Claimant's PTSD symptoms started occurring in approximately 2000 in the form of memory loss. (Tr. 38). Claimant testified he would not realize where he was and also experienced nightmares, cold sweats and the feeling that Claimant was "back [in Gulf War] again." (Tr. 38). Claimant stated that since approximately 2000, his PTSD symptoms have "gotten worse." (Tr. 38). Claimant was taking medications to help with his depression and

anxiety but Claimant testified that the pills were not doing anything for Claimant so he decided to discontinue taking them. (Tr. 39). Claimant stated he wakes up with nightmares and that it is "just almost impossible for [Claimant] to get back to sleep." (Tr. 40). Claimant said he takes naps during the day and has an erratic sleep schedule. (Tr. 40). Claimant testified that he has anxiety attacks when he does activities that make him feel like he is "boxed in." (Tr. 40).

Claimant testified that he does not like to be around a lot of people. (Tr. 40). Claimant stated that he "kind of [has] a problem with people in general" and only has one friend that he has known for approximately 12 years. (Tr. 41). Claimant testified he previously worked at a chicken plant in the packing department. (Tr. 44). In that position, Claimant testified he was working on concrete floors, packing chicken eggs and grade chicken legs. (Tr. 44). Claimant testified he was experiencing PTSD symptoms while in this position but he was not being treated for them. (Tr. 44). Claimant testified that he experienced a seizure which made it physically impossible for him to continue in his position with the chicken plant. (Tr. 44-45). Claimant testified he has not been employed since April of 2002 and, while he has "talked to places" regarding employment, Claimant "never really actually applied." (Tr. 45).

Claimant also previously worked in a rubber factory prior to his employment with the chicken plant. (Tr. 45). Claimant made retreads for truck tires. (Tr. 45). Claimant also worked with mentally handicapped adults and at a service station. (Tr. 46). Claimant testified that at the service station, he changed tires, did oil changes and basic maintenance on vehicles. (Tr. 46). Claimant's work with mentally handicapped adults required Claimant to help the mentally handicapped get dinner ready and get ready for bed. (Tr. 46).

Claimant described his typical day as one where he assists his children in getting ready

for school, spending a good part of the morning in the bathroom, watching a little TV and trying to catch up on some sleep. (Tr. 47).  Claimant testified that he engages in some relaxation techniques to help with his episodes where Claimant wakes up in the middle of the night, however, Claimant stated "[s]o far it's been virtually ineffective...." (Tr. 48).  Claimant testified that the "only real battle I've had with [his physicians] is with the depression meds...." (Tr. 48).  Claimant stated that he discontinued his use of these because he does not feel the depression medication is working. (Tr. 48).  Claimant also stated that he is tired all of the time no matter how much sleep he gets. (Tr. 50).

Claimant testified that he has gained approximately fifteen (15) pounds within the last five years and states that it is difficult for him to "really get into any kind of exercise" because Claimant cannot "run because of [Claimant's] knees." (Tr. 50).  Claimant also says that exercise is difficult because walking for any length of time results in pain to his hip and knees. (Tr. 51).  Claimant testified he was diagnosed with degenerative arthritis in both of his knees. (Tr. 51).

The ALJ then solicited testimony from the Vocational Expert ("VE").  The VE characterized Claimant's previous work as follows:  a chicken packer is light and unskilled; general laborer in a tire re-treading plant is a medium exertional level and unskilled; work as a house parent is a medium exertional level and semi-skilled; work as a service station attendant is a medium exertional level and unskilled. (Tr. 52).  The VE testified that Claimant would be unable to do any of Claimant's past work but that there were significant jobs in the local and national economy at both the sedentary and light exertional levels that existed. (Tr. 53).

### III.  The Motions for Summary Judgment

A.    Contentions of the Parties

Claimant contends the ALJ's decision is not supported by substantial evidence. Claimant argues the ALJ failed to address or analyze Claimant's mental health treatment records which "contain consistent and thorough descriptions of [Claimant's] mental impairments and IBS and their affect [sic] on [Claimant's] ability to function." See Pls.' Summ. J. Mot., Pg. 10 (Dkt. 9). Claimant contends "these diagnoses are important evidence that should have been considered by the ALJ" and the "failure of the ALJ to address these important medical records is reversible error." Id. at 11. Claimant also argues the ALJ "failed to properly weigh the medical opinions from [Claimant's] treating sources." Id. at 12. Claimant contends that "[e]ven if the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must still analyze and weigh the opinion...." Id. at 13. Claimant argues the ALJ's assessment of Claimant's credibility was in error because the ALJ relied "exclusively on [Claimant's] daily activities" and "ignores the repeated evidence that [Claimant's] anxiety and stress cause [Claimant] to eat too much." Id. at 14-15. Lastly, Claimant asserts that the ALJ committed reversible error by not seeking additional evidence from Dr. Crossland and also by "not including deficiencies in [Claimant's] memory and other uncontested limitations" in the hypothetical posed to the VE. Id. at 15.

In support of his Motion for Summary Judgment, the Commissioner contends substantial evidence supports the ALJ's decision. See Def.'s Summ. J. Mot., Pg. 1 (Dkt. 11). Specifically, Commissioner argues the "ALJ complied with the regulations when she considered [Claimant's] [mental health treatment] records." Id. at 6. Commissioner also asserts that the ALJ properly considered Claimant's treating source opinions in accordance with the regulations and did not "summarily dismiss the VA disability opinions based on the GAF scores." Id. at 8.

Commissioner argues the ALJ's credibility determination was also proper because the ALJ relied upon the record in making the determination. Id. at 12. Lastly, Commissioner argues the ALJ "is not required to act as Claimant's counsel with respect to developing the record. Id. at 14. The ALJ found "the record adequately provided insight into the severity of [Claimant's] mental and physical impairments" and was not required "to obtain additional evidence." Id. at 14-15. Commissioner contends ALJ properly "accounted for [Claimant's] credible limitations." Id. at 9.

B.      Discussion

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3) (2010). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 664-65 (1988); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

1.      **ALJ Properly Analyzed & Assessed Claimant's Mental Health Treatment Records & Treating Source Opinions**

All medical opinions are to be considered in determining the disability status of a claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the

applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist.  20 C.F.R. § 404.1527(d)(2) (2010).  Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight."  Id. (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). The opinion and credibility of claimant's treating physician is entitled to great weight but may be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984).

Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. §416.927(d)(2).  See Craig, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).  To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Heckler v. Campbell, 461 U.S. at 461; 20 C.F.R. §§ 404.1508;

<u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990).

Affording controlling weight to Claimant's treating physician and Licensed Clinical Social Worker's opinions is inappropriate in this case because the ALJ found the opinions to be inconsistent with other substantial evidence in the case record. Claimant first argues the ALJ improperly rejected "Dr. Beightol's opinion," however, the Court notes Claimant is incorrect in this assessment. Mr. Jerome K. Beightol is not a doctor but, instead, a Licensed Clinical Social Worker ("LCSW"). Nonetheless, the ALJ considered Mr. Beightol's opinion that "Claimant had poor or no ability in many work-related mental activities" but discredited it due to Claimant's "longitudinal mental health history." <u>See</u> ALJ's Decision, Transcript Pg. 15. The ALJ noted that despite Mr. Beightol's opinion, Claimant had "never been hospitalized for any psychiatric or psychological impairments," "is not taking medications" and participates in daily activities that "are not indicative of a person with marked mental abilities." <u>Id.</u> Additionally, the ALJ did not err in discrediting Dr. Meyer's opinion and did not ignore it. As Commissioner argues, Mr. Beightol was a part of a team of VA medical providers that were treating Claimant for PTSD symptoms. The ALJ did not summarily dismiss Dr. Meyer's opinions but, instead, the ALJ notes that "Claimant was evaluated for PTSD by the Veteran's Administration and diagnosed with PTSD." <u>Id.</u> at 17. Dr. Meyer was a part of that team of VA medical providers and the Court finds the ALJ was proper in her assessment and weighing of Claimant's treating source opinions. Accordingly, Claimant's argument is without merit.

Claimant also argues the ALJ failed to consider the combined effect of all of Claimant's impairments and instead focused "only on each separate impairment [and] not how they interact with each other." <u>See</u> Pl.'s Summ. J. Mot., Pg. 12 (Dkt. 9). Commissioner contends the "ALJ

20

considered [Claimant's] limitations from his combined impairments, posed questions to the vocational expert that included those limitations, and despite the limitations, the vocational expert found work that a hypothetical individual with [Claimant's] limitations could perform." See Def.'s Summ. J. Mot., Pg. 9 (Dkt. 11).

In her decision, the ALJ recognized that a "[Claimant's] combination of impairments causes significant limitations in the [C]laimant's ability to perform basic work activities." See ALJ Decision, Transcript, Pg. 11. The ALJ listed Claimant's severe impairments as follows: 1) seizure disorder; degenerative arthritis, resulting in chronic knee and back strain; 3) irritable bowel syndrome; and 4) post traumatic stress disorder. Id. While the ALJ found Claimant's combination of impairments to be severe, the ALJ expressly stated that "the record does not establish that the [C]laimant is subject to an impairment or combination of impairments, which meets or equals the requirements" within the regulations. Id. at 11-12. In making this finding the ALJ considered all of Claimant's impairments and did not solely focus on "each separate impairment" as Claimant alleges. The Court finds the ALJ properly considered Claimant's combination of impairments as a whole and, therefore, substantial evidence supports the ALJ's determination.

### 2. ALJ Properly Determined Claimant Was Not Fully Credible

The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). Under Craig, when a claimant alleges disability from subjective symptoms, he must first show the existence of a medically determinable impairment that could cause the symptoms alleged. Id. at 594. The ALJ must next "expressly consider" whether a claimant has such an impairment." Id. at 596. If the claimant makes this showing, the ALJ must consider all evidence, including the claimant's statements

about his symptoms, in determining whether the claimant is disabled.  Id. at 595.  While the ALJ

must consider the claimant's statements, he need not credit them to the extent they are

inconsistent with the objective medical evidence or to the extent the underlying objective

medical impairment could not reasonably be expected to cause the symptoms alleged.  Id.

The regulations set forth certain factors for the adjudicator to consider to determine the

extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration,
> frequency, and intensity of the individual's pain or other symptoms;
> 3) Factors that precipitate and aggravate the symptoms; 4) Type,
> dosage, effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other symptoms; 5)
> Treatment, other than medication, the individual receives or has
> received for relief of pain or other symptoms; 6) Any measures other
> than treatment the individual uses or has used to relieve pain or other
> symptoms; and 7) Any other factors concerning the individual's
> functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c).

Accompanying factors are provided in SSR 96-7p that the adjudicator must also consider

in addition to the objective medical evidence when assessing the credibility of an individual's

statements.  These factors include medical signs and laboratory findings; diagnosis, prognosis,

and other medical opinions provided by medical sources; and statements and reports about

claimant's medical history, treatment and response, prior work record and efforts to work, daily

activities, and other information concerning the claimant's symptoms and how the symptoms

affect the individual's ability to work. SSR 96-7p.

"Because he had the opportunity to observe the demeanor and to determine the credibility

of the claimant, the ALJ's observations concerning these questions are to be given great weight."

Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp.

776 (E.D. Va. 1976)). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). "We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Claimant's argument regarding the ALJ's credibility determination must fail. Claimant argues the "ALJ ignores the repeated evidence that [Claimant's] anxiety and stress cause [Claimant] to eat too much." See Pl.'s Summ. J. Mot., Pg. 14-15 (Dkt. 9). Contrary to Claimant's assertion, the ALJ's decision, as well as the record, illustrate that the ALJ evaluated Claimant's symptoms in accordance with the two-part test in Craig and the SSR 96-7p factors. Under Craig, the ALJ first found that "Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." See ALJ Decision, Transcript Pg. 14. The ALJ, however, did not find Claimant's statements concerning the intensity, persistence and the limiting effects of these symptoms to be "credible to the extent they are inconsistent with [Claimant's] [] residual functional capacity assessment." Id. Second, the ALJ "expressly" considered whether Claimant's mental and physical impairments resulted in total disability by devoting nearly three and one-half pages of analysis to explain her reasoning supporting her finding. Id. at 14-18.

In accordance with the factors set forth in SSR 96-7p, the ALJ examined the objective medical evidence, Claimant's daily activities, Claimant's work history and Claimant's statements concerning the limiting effects of his symptoms. First, the ALJ examined Claimant's

mental and physical impairments and determined that while Claimant alleged he continued to be disabled due to these impairments, Claimant's objective medical evidence was inconsistent. Specifically, Claimant "has never been hospitalized for any psychiatric or psychological impairments" and is "not taking any medications because [Claimant] stopped taking them as [Claimant] felt that they did not help him." See ALJ Opinion, Transcript Pg. 15. The ALJ also considered Claimant's seizure disorder medical records and determined "that the seizure disorder is controlled and the Claimant has not experienced a seizure since April 2003." Id. at 16. Claimant was also noted to have attended counseling for his PTSD "for a period of time, and then stopped." Id. at 17.

The ALJ also considered Claimant's daily activities and explained her reasoning as to why the ALJ believed Claimant's allegations lacked veracity. The ALJ explicitly stated that "Claimant has reported that he attends church and watches children," "helps his own children with homework," and "is able to drive, hunt, and fish." Id. at 15. The ALJ determined that those "activities are not indicative of a person with marked mental abilities." Id. The ALJ considered more than just Claimant's daily activities in reaching a credibility determination. Therefore, the Court finds that the ALJ had more than a mere scintilla of evidence and appropriately discredited Claimant's subjective statements regarding his pain and symptoms.

### 3. ALJ Properly Accounted for Claimant's Credible Limitations in the Hypothetical Posed to the VE

In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). The ALJ is afforded "great latitude in posing hypothetical

questions," <u>Koonce v. Apfel</u>, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999), and

need only pose those that are based on substantial evidence and accurately reflect the plaintiff's

limitations. <u>Copeland v. Bowen</u>, 861 F.2d 536, 540-41 (9th Cir. 1988). "The purpose of

bringing in a vocation expert is to assist the ALJ in determining whether there is work available

in the national economy which the particular claimant can perform." <u>Cline v. Chater</u>, No. 95-

2076, 1996 U.S. Dist. LEXIS 8692, at *4 (4th Cir. Apr. 19, 1996). "[R]equiring the testimony of

a vocational expert is discretionary." <u>Hall v. Harris</u>, 658 F.2d 260, 267 (4th Cir. 1981).

 Here, Claimant argues the ALJ's hypothetical posed to the VE was fatally deficient

because the ALJ did not include "deficiencies in [Claimant's] memory and other uncontested

limitations." <u>See</u> Pl.'s Summ. J. Mot., Pg. 15 (Dkt. 9). Commissioner argues the "ALJ's

hypothetical question to the vocational expert was exhaustive and more than accounted for

[Claimant's] credible limitations." <u>See</u> Def.'s Summ. J. Mot., Pg. 9 (Dkt. 11). Commissioner

contends the ALJ "more than captured the credible mental limitations of record" by "limiting

[Claimant] to entry level, unskilled, routine, repetitive work with things rather than people and

minimal contact with the public." <u>Id.</u> at 11. The Court finds the ALJ's hypothetical fairly set out

all of Claimant's credible limitations. The ALJ explained, in her decision, the reasoning why

certain limitations were not presented to the VE. For example, the ALJ stated Mr. Jerome K.

Beightol's opinion was not credible because Claimant "has never been hospitalized for any

psychiatric or psychological impairments," stopped "taking any medications," and engaged in

activities "not indicative of a person with marked mental abilities." <u>See</u> ALJ's Decision,

Transcript, Pg. 15. The ALJ "need only pose those [limitations] that are based on substantial

evidence and accurately reflect the [Claimant's] limitations." <u>Copeland v. Bowen</u>, 861 F.2d 536,

540-41 (9th Cir. 1988).  Accordingly, Claimant's argument in this regard is unpersuasive.

### 4. ALJ Properly Developed Claimant's Medical Records that Documented Claimant's Complete Medical History

The Fourth Circuit has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  Although a Claimant has a duty to diligently supply medical records to the SSA documenting the Claimant's impairments and limitations, the Commissioner bears the responsibility of developing the Claimant's complete medical history.  20 C.F.R. §§ 416.912(d), 404.1740(b); See Smith v. Barnhart, 395 F. Supp.2d 298, 302 (E.D.N.C. 2005). Therefore, where a Claimant's medical records are "inadequate" to determine whether she is disabled, the ALJ must seek additional records and is obligated to re-contact Claimant's treating physicians "and seek additional evidence or clarification" from them.  20 C.F.R. § 416.912(e)(1); Smith, 395 F. Supp. 2d 298 at 301.

In addition, "[t]he Claimant must also show he was prejudiced by the inadequate record and that, had the ALJ complied with the regulation, he 'could and would have adduced evidence that might have altered the result."  Hyde v. Astrue, 2008 U.S. App. LEXIS 10228 (5th Cir. 2008) (citing Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)).  Remand is necessary where the ALJ fails to fulfill his duty to develop the medical record and the Claimant is prejudiced as a result.  Walker, 642 F.2d at 714.  Prejudice results where the Commissioner's decision "might reasonably have been different had the evidence been before [him] when the decision was rendered."  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).  Evidentiary gaps that result in unfairness or clear prejudice require a remand.  Brown v. Shalala, 44 F.3d 931, 935-36 (11th Cir. 1995); See also Marsh, 632 F.2d at 300.

26

Claimant additionally argues the ALJ committed reversible error by failing to seek clarifying evidence from Claimant's treating physician, Dr. Crossland. See Pl.'s Summ. J. Mot., Pg. 15 (Dkt. 9). Commissioner argues no further development was required in Claimant's case. See Def.'s Summ. J. Mot., Pg. 14 (Dkt. 11). The Court disagrees with Claimant's argument and finds the record adequately provided insight into the severity of Claimant's mental and physical impairments. The ALJ's determination analyzed Claimant's treatment records individually. The ALJ considered opinions from the following individuals: 1) Dr. Stephen Crossland; 2) Jerome K. Beightol, LCSW; 3) Dr. Karl Kursey; 4) Dr. Frank Roman; 5) Dr. Joseph Shaver; 6) Dr. Cynthia Osborne; 7) Dr. Stephen Nutter and 8) Tracey L. Cosner-Shepherd, M.S. The ALJ was within her discretion to determine the record adequately represented Claimant's complete medical history. Ultimately, it is Claimant's responsibility to prove to the Commissioner that Claimant is disabled. See 42 U.S.C. §423(d)(5)(A). The Court finds the ALJ met her duty to explore all relevant facts and to inquire into the issues necessary for adequate development of the record such that further development was unnecessary. Accordingly, Claimant's argument must fail.

C.   Recommendation

1.    Claimant's Motion for Summary Judgment be **DENIED** because the ALJ properly evaluated the treating physician's reports and Claimant's mental health records, correctly assessed Claimant's credibility and provided for Claimant's credible limitations in the VE hypothetical.

2.    Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons.

Any party who appears *pro se* and any counsel of record, as applicable, may, within

fourteen (14) days of the date of this Report and Recommendation, file with the Clerk of the

Court written objections identifying the portions of the Report and Recommendation to which

objection is made, and the basis for such objection.  A copy of such objections should be

submitted to the District Court Judge of Record.  Failure to timely file objections to the Report

and Recommendation set forth above will result in waiver of the right to appeal from a judgment

of this Court based upon such Report and Recommendation.

DATED: August 4, 2011

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE