IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**DEREK MOORE,**

     Plaintiff,

**v.**                                     Civil Action No. 2:11cv17
                                             (BAILEY)

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security,**

     Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION**

**I.**    **Introduction**

On this day, the above-styled matter came before the Court for consideration of the

Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert

[Doc. 14] and the plaintiff's Objections thereto [Doc. 15]. Pursuant to 28 U.S.C. §

636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the

magistrate judge's findings to which objection is made. However, failure to file objections

permits the district court to review the R&R under the standards that the district court

believes are appropriate, and under these circumstances, the parties' right to *de novo*

review is waived. *See **Webb v. Califano,*** 468 F.Supp. 825 (E.D. Cal. 1979). Accordingly,

this Court will conduct a *de novo* review only as to those portions of the R&R to which the

plaintiff objected. The remaining portions of the R&R will be reviewed for clear error. As

a result, it is the opinion of this Court that the R&R should be **ADOPTED**.

## II.  **Background**

On March 4, 2011, the plaintiff filed his Complaint [Doc. 1] seeking judicial review of an adverse decision by the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3).  Pursuant to the Local Rules, this case was referred to Magistrate Judge Seibert for a recommended disposition.  On June 8, 2011, the plaintiff moved for judgment on the pleadings [Doc. 8].  In response, the defendant moved for summary judgment on July 6, 2011 [Doc. 10].  In support of his motion, the plaintiff asserts five claims of error on the part of the Administrative Law Judge ("ALJ").  In his motion, the defendant responds to each claim and argues that the ALJ's decision is supported by substantial evidence.

First, the plaintiff argues that the ALJ erred by not considering whether his combination of impairments medically equaled a listed impairment.  Instead, the plaintiff argues that the ALJ focused "only on each separate impairment [and] not how they interact with each other."  ([Doc. 9] at 12).  In response, the defendant contends that the ALJ "considered Plaintiff's limitations from his combined impairments, posed questions to the vocational expert that included those limitations, and despite the limitations, the vocational expert found work that a hypothetical individual with Plaintiff's limitations could perform." ([Doc. 11] at 9).

Second, the plaintiff alleges that the ALJ conducted an improper assessment of his credibility in formulating his residual functional capacity ("RFC").  In particular, the plaintiff argues that the ALJ improperly relied upon his lack of medical treatment and daily activities to discredit his subjective complaints of pain.  The defendant responds that the ALJ properly discredited the plaintiff, applying the correct standard to the medical evidence of

2

record.

Third, the plaintiff asserts that the ALJ erred by failing to attribute proper weight to the opinions of his treating sources. In particular, a licensed clinical social worker named Jerome K. Beightol completed a mental impairment questionnaire dated August 2, 2007, opining that the plaintiff's post-traumatic stress disorder ("PTSD") caused him to have moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere); and four or more episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation or signs and symptoms (which may include deterioration of adaptive behaviors). ([Doc. 6-10] at 99-100). Based upon these limitations and a global assessment of functioning ("GAF") score of 35, Mr. Beightol opined that the plaintiff was unable to work. (Id. at 98). Similarly, Andrew Meyer, D.O., diagnosed the plaintiff with PTSD, scored his GAF at 35, and opined that "he is both totally and permanently disabled and unemployable." ([Doc. 6-8] at 9).

The ALJ found that Mr. Beightol's opinion was contradicted by the plaintiff's "longitudinal mental health history," his failure to seek treatment (hospitalization or medication) and his daily activities (attending church, watching his children and helping them with homework, driving, hunting, and fishing). ([Doc. 6-2] at 16). The ALJ did not specifically mention the opinion of Dr. Meyer. Accordingly, the plaintiff contends that the ALJ failed to adequately explain why he rejected Beightol's opinion, while neglecting to even mention the opinion of Dr. Meyer. In response, the defendant argues that the ALJ gave adequate and specific reasons for rejecting Mr. Beightol's opinion and that the ALJ

did not need to separately evaluate the nearly identical opinion of Dr. Meyer, who is a member of the Veteran's Administration ("VA") team that provided medical treatment to the plaintiff.

Fourth, the plaintiff argues that the ALJ erred by failing to consider all of his VA mental health records, which contain GAF scores as low as 35 and a 100% disability rating from the VA as a result of his PTSD and irritable bowel syndrome ("IBS"). In response, the defendant argues that the ALJ was not required to adopt the VA's disability rating as dispositive and that the ALJ properly rejected VA disability opinions based on the GAF scores as inconsistent with the record.

Fifth, the plaintiff contends that the ALJ's hypothetical to the vocational expert ("VE") was inadequate because it failed to include deficiencies in his memory and "other uncontested limitations." ([Doc. 9] at 15). The defendant responds that the ALJ included all credible and medically-supported limitations in the hypothetical posed to the VE.

On August 4, 2011, Magistrate Judge Seibert rejected all five of the plaintiff's claims of error and recommended that the plaintiff's motion be denied, that the defendant's motion be granted, that the ALJ's decision be affirmed. ([Doc. 14] at 27). First, the magistrate judge concluded that the ALJ properly analyzed and assessed the plaintiff's mental health treatment records and treating source opinions. (Id. at 18). Specifically, the magistrate judge determined that the ALJ had given proper reasons for the weight he attributed to Mr. Beightol's opinion, including that the plaintiff had never been hospitalized nor was taking medication for mental health issues and that the plaintiff's daily activities were not indicative of a person with marked mental abilities. (Id. at 20). Similarly, the magistrate judge found that the ALJ did not need to evaluate Dr. Meyer's opinion separate and apart from the other

4

VA treating source opinions, noting that "Dr. Meyer was part of [a] team of VA medical providers . . .." (Id.). Second, the magistrate judge concluded that the ALJ properly considered the combined effect of the plaintiff's severe impairments and explicitly found that those impairments, when combined, did not medically equal a listed impairment. (Id. at 21). Next, the magistrate judge held that the ALJ had properly determined that the plaintiff was not fully credible. (Id.). In particular, the magistrate judge found that the ALJ appropriately examined not only the plaintiff's daily activities but also other objective medical evidence to reach that determination. (Id. at 22-24). Finally, the magistrate judge concluded that the ALJ had properly accounted for the plaintiff's credible limitations in the hypothetical she posed to the VE. (Id. at 24).

## III.    **Applicable Standards**

### A.    **Judicial Review of an ALJ Decision**

"Judicial review of a final decision regarding disability benefits is limited to determining whether the findings . . . are supported by substantial evidence and whether the correct law was applied. See 42. U.S.C. § 405(g). 'The findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.' *Richard v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase 'supported by substantial evidence' means 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' *See Perales*, 402 U.S. at 401, 91 S.Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216 (1938)). Substantial evidence . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance . . .. Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it

5

the court's function to substitute its judgment . . . if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir. 1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). 'This Court does not find facts or try the case *de novo* when reviewing disability determinations.' *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976)." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B.    Five-Step Evaluation Process

To determine whether a claimant is disabled, the ALJ considers the following five-step evaluation process:

Step One:    Determine whether the claimant is engaging in substantial gainful activity;

Step Two:    Determine whether the claimant has a severe impairment;

Step Three:    Determine whether the claimant has a listed impairment (20 C.F.R. Pt. 404, Subpt. P, App. 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four:    Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five:    Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

See 20 C.F.R. § 404.1520 (2011).

### IV.    Discussion

In his Objections [Doc. 15], timely filed on August 12, 2011, the plaintiff takes issue with the analysis of the magistrate judge. The Court will address these objections as they

relate to each of the plaintiff's claims of error discussed above. In so doing, the Court will determine, *de novo*, whether either claim of error necessitates a finding that the ALJ's decision is not supported by substantial evidence.

## A. ALJ's Consideration of Combination of Impairments

In his motion, the plaintiff argues that the ALJ failed to properly consider whether the combined effect of his impairments medically equaled one of the listed impairments. The magistrate judge rejected this claim. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of the combined effect of the plaintiff's impairments.

Step three requires an ALJ to determine whether a claimant's impairments equal the level of severity of an impairment described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment"). A claimant has a listed impairment if he or she has an impairment that meets the requirements of a listing or is medically equivalent to a listed impairment. See 20 C.F.R. §§ 404.1525, 404.1526. An ALJ will find that a claimant's "impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement (see § 404.1509)." 20 C.F.R. § 404.1525(c)(3). Alternatively, an ALJ will find that a claimant's "impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Medical equivalence can be found based upon the combined effect of a claimant's impairments. Specifically, if a claimant has "a combination of impairments, no one of which meets a listing . . . , [an ALJ] will compare [the claimant's] findings with those for closely analogous

7

listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [an ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing." 20 C.F.R. § 1526(b)(3).

Here, the plaintiff does not argue that he has one particular impairment that meets or medically equals a listed impairment. Instead, the plaintiff argues that the ALJ erred by not considering whether a combination of his impairments medically equaled a listed impairment. More specifically, the plaintiff argues that the ALJ erred by ignoring medical evidence that "[h]is anxiety is often high which in turn increases his physical problems." ([Doc. 9] at 12) (quoting [Doc. 6-7] at 34). This Court disagrees.

First, the ALJ explicitly stated in his factual findings that he considered the combination of all impairments. Specifically, the ALJ made the finding that "the above *combination of impairments* [is] 'severe' . . . [;] [h]owever, . . . the record does not establish that the claimant is subject to an impairment or *combination of impairments*, which meets or equals the requirements of any section of the Listings in Appendix, Subpart P, Regulations No. 4 particularly the 1.00 series dealing with the musculoskeletal system, the 11.00 series concerning the neurological system[,] or the 5.00 series concerning the digestive system." ([Doc. 6-2] at 12-13) (emphasis added). The ALJ then proceeded to describe evidence pertaining to all the plaintiff's impairments for the next page and a half. "The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" ***Bledsoe v. Barnhart***, 165 Fed.Appx. 408, 411 (6th Cir. 2006). Based

upon the above, this Court finds that the ALJ complied with 20 C.F.R. § 404.1526.

Second, this Court is unpersuaded by the plaintiff's argument that the ALJ erred by ignoring medical evidence that "[h]is anxiety is often high which in turn increases his physical problems." ([Doc. 9] at 12) (quoting [Doc. 6-7] at 34). From a review of the record, this Court interprets this argument as a contention that the ALJ failed to consider that the plaintiff's PTSD exacerbated his IBS because the plaintiff's stress caused him to constantly eat. (See [Doc. 6-7] at 39) (noting that the plaintiff "eat[s] his stress"). However, even in its exacerbated form, the ALJ found that the plaintiff's IBS did not medically equal a listed impairment of the digestive system: "Despite the claimant's reports of irritable bowel disease, he continues to gain weight." ([Doc. 6-2] at 13). A review of the 5.00 series concerning the digestive system explains why the ALJ attributed significance to the undisputed fact that the plaintiff continued to gain weight despite being diagnosed with IBS.

A digestive impairment meets the criteria of inflammatory bowel disease, a listed impairment, if a claimant shows "[t]wo of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:"

> 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
>
> 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
>
> 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
>
> 4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

5. *Involuntary weight loss* of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or

6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 5.06 (emphasis added). Alternatively, a digestive impairment meets the criteria of a catch-all listed impairment if a claimant shows "*[w]eight loss* due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." Id. at 5.08 (emphasis added). As such, the ALJ's finding that the plaintiff continued to gain weight precludes a finding that the plaintiff's IBS, as exacerbated by his PTSD, medically equals either of the two above-described listed impairments. That the ALJ did not spell out this consideration is not reversible error. *See Bledsoe*, 165 Fed.Appx. at 411 ("The ALJ did not err by not spelling out every consideration that went into the step three determination.").

Therefore, this Court cannot find unsupported by substantial evidence the ALJ's decision that the combined effect of the plaintiff's impairments did not medically equal a listed impairment. Accordingly, this Court agrees with the magistrate judge that the ALJ did not err in his consideration of the plaintiff's impairments at step three.

## B. ALJ's Credibility Analysis

In his motion, the plaintiff alleges that the ALJ improperly relied upon his daily activities and lack of medical treatment or medications to discredit his subjective complaints. The magistrate judge rejected this claim. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R,

this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's credibility determination.

An ALJ's credibility analysis is a two-step process:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . ..

Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities.

SSR 96-7p; 1996 WL 374186, *2.

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; 1996 WL 374186, *3.

At step one of the credibility analysis, the ALJ found that the plaintiff has severe impairments, including PTSD, IBS, a seizure disorder, and degenerative arthritis, which could reasonably be expected to produce the plaintiff's pain or other symptoms. At step two, however, the ALJ questioned the plaintiff's subjective complaints regarding the

intensity, persistence, and limiting effects on his ability to do basic work activities. In so doing, the ALJ considered the plaintiff's daily activities and lack of medical treatment. Specifically, the ALJ stated as follows:

> The claimant's mental and physical impairments do not result in total disability. The claimant reports that he can care for himself and others when he needs or wants too. He cared for his child until she began school. He drives and does some shopping. The claimant is active in church activities including taking care of children during a night service. He reported that he hunts, fishes and does yard work. These activities do not indicate total disability. He has never had back surgeries and no physical therapy since 2001. He has never been hospitalized for surgeries, PTSD, or his back problems. Although he alleges that he must use the bathroom many times each day due to irritable bowel, he continues to gain weight.

([Doc. 6-2] at 15).

First, this Court finds no error in the ALJ's consideration of the plaintiff's lack of medical treatment. In fact, such a consideration appears to be encouraged by the fifth factor listed above. See SSR 96-7p; 1996 WL 374186, *3. For example, the ALJ noted that the plaintiff "has never had back surgeries [or] physical therapy since 2001" nor has ever been "hospitalized for surgeries, PTSD, or his back problems." ([Doc. 6-2] at 15). Appropriately, the ALJ was considering "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms." SSR 96-7p; 1996 WL 374186, *3.

Second, this Court finds no error in the ALJ's consideration of the plaintiff's daily activities. In so doing, this Court notes that such a consideration is explicitly contemplated by the first factor listed above. See SSR 96-7p; 1996 WL 374186, *3. In addition, this Court finds no indication of the type of selective citation condemned in *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). In *Hines*, the Fourth Circuit affirmed a district court which

found that an ALJ erred when he selectively cited evidence concerning the daily activities of a claimant suffering from sickle cell disease. *Id.* at 565-66. In particular, the ALJ cited that the claimant raked his yard and cut his grass, occasionally did repairs such as fixing a door knob, and was active in his church as a deacon. *Id.* at 566. The Court found that this was selective citation because the ALJ improperly ignored the claimant's testimony that he "[r]akes the yard or tries mowing the grass [but] when [he] start[s] to feel bad [he] stop[s] and finish[es] up – maybe tr[ies] to finish up the next day . . .." *Id.* The Court found further selective citation in that the claimant had actually testified that he "probably" would "try to fix . . . a doorknob" and that he attends church only two or three times a month. *Id.* Unlike in *Hines*, the plaintiff has failed to provide evidence of any significant qualifications to the daily activities relied upon that the ALJ ignored to discredit the plaintiff's subjective complaints. Moreover, this case is also distinguishable from *Hines* in that the ALJ here relied upon the plaintiff's lack of medical treatment in addition to his daily activities.

For these reasons, this Court finds that substantial evidence supports the ALJ's credibility determination. Accordingly, this Court agrees with the magistrate judge that the ALJ appropriately considered the plaintiff's lack of credibility concerning the intensity, persistence, and limiting effects of his ability to do basic work activities.

## C.    ALJ's Consideration of Treating Source Opinions

### 1.    Beightol Opinion

In his motion, the plaintiff asserts that the ALJ failed to properly consider the treating source opinion of Jerome K. Beightol, a licensed clinical social worker and VA medical provider. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated

in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of Mr. Beightol's opinion.

In evaluating the opinions of treating sources, an ALJ must generally give more weight to the opinion of a treating physician because the physician is most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." ***Ward v. Chater***, 924 F.Supp. 53, 55 (W.D. Va. 1996); see also 20 C.F.R. § 404.1527(d)(2).

If the ALJ determines that a treating physician's opinion should not be accorded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency between the opinion and the record as a whole, (5) whether the treatment source is opining within his or her specialization, and (6) any other factors which tend to support or contradict the opinion. In addition, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 404.1527(d)(2). In this regard, Social Security Ruling 96-2p provides that those decisions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, *5.

On August 2, 2007, Mr. Beightol completed a mental impairment questionnaire

14

opining that the plaintiff's PTSD caused him to have moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere); and four or more episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation or signs and symptoms (which may include deterioration of adaptive behaviors). ([Doc. 6-10] at 99-100). Based upon these limitations and a global assessment of functioning ("GAF") score of 35, Mr. Beightol opined that the plaintiff was unable to work. (Id. at 98).

In considering Mr. Beightol's opinion, the ALJ stated in whole:

[Mr. Beightol's] opinions are not credible based on the claimant's longitudinal mental health history. It is noted that the claimant has never been hospitalized for any psychiatric or psychological impairments. He has been involved in outpatient treatment from time to time with therapy. The claimant is not taking any medications because he stopped taking them as he felt that they did not help him. The claimant has reported that he attends church and watches children. He also helps his own children with homework. He is able to drive, hunt, and fish. These activities are not indicative of a person with marked mental abilities.

([Doc. 6-2] at 16).

Upon careful consideration, this Court concludes that the above-quoted analysis adequately complies with the specificity requirements of 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p. As a subsequent reviewer, this Court finds that the ALJ has made sufficiently clear the weight she gave to Mr. Beightol's opinion and the reasons for that weight. Specifically, the ALJ gave little weight to Mr. Beightol's opinion that the plaintiff's PTSD prevented him from working because he had "never been hospitalized for any psychiatric or psychological impairments" he "is not taking any medications," and his daily

activities "are not indicative of a person with marked mental abilities." (See [Doc. 6-2] at 16). Moreover, the plaintiff has failed to present any authority that these reasons are improper as a matter of law.

Therefore, this Court cannot conclude that the ALJ's decision to attribute little weight to Mr. Beightol's opinion is unsupported by substantial evidence. Accordingly, this Court agrees with the magistrate judge that the ALJ properly considered Mr. Beightol's opinion.

### 2. Meyer Opinion

Similarly, the plaintiff asserts that the ALJ failed to properly consider the treating source opinion of Andrew Meyer, D.O., a psychiatrist and VA medical provider. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of Dr. Meyer's opinion.

On December 16, 2004, Dr. Meyer conducted a compensation and pension examination for the plaintiff's PTSD for the purposes of his claim for disability compensation from the Department of Veterans Affairs. ([Doc. 6-8] at 7-9). According to Dr. Meyer's notes approved January 24, 2005, the plaintiff described traumatic events from his service in the Persian Gulf War, including viewing "numerous enemy bodies" and "going past burned-out enemy vehicles and seeing bodies inside." (Id. at 7-8). The plaintiff reported having no hobbies and that he typically isolates himself. (Id. at 8). Based upon these findings, Dr. Meyer diagnosed the plaintiff as follows:

> Post-traumatic stress disorder, chronic, severe. Global assessment of functioning is 35, based on continuous severe symptoms of post-traumatic stress disorder, as well as severe limitation of his social and occupational

16

functioning, as described. It is felt that due to the patient's history that he is both totally and permanently disabled and unemployable.

(Id. at 9).

In generically referencing Dr. Meyer's opinion as a VA medical provider, the ALJ stated as follows:

> Concerning the claimant's mental impairments, he was evaluated for PTSD by the Veteran's Administration and diagnosed with PTSD.
>
> . . .
>
> Information from the VA program indicated a diagnosis of posttraumatic stress disorder, with ongoing symptoms.

([Doc. 6-2] at 18).

The plaintiff argues that the ALJ committed reversible error by not more specifically discussing Dr. Meyer's opinion and stating reasons for rejecting his conclusions. This Court disagrees.

As the magistrate judge noted, Dr. Meyer was a part of the same team of VA medical providers that included Mr. Beightol, who also opined that the plaintiff had a GAF score of 35 and was disabled. Above, this Court concluded that the ALJ's rejection of Mr. Beightol's opinion based upon the plaintiff's lack of medical treatment or medications and daily activities adequately complied with the specificity requirements of 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p. That the ALJ failed to repeat these reasons in rejecting Dr. Meyer's nearly identical opinion does not necessitate a finding that the ALJ's step three determination is unsupported by substantial evidence. Accordingly, this Court agrees with the magistrate judge that the ALJ properly assessed and weighed Dr. Meyer's

opinion.[1]

### D. ALJ's Consideration of VA Medical Records

In his motion, the plaintiff asserts that the ALJ failed to consider all of his VA medical records, including disabling GAF scores and VA ratings of 100% disability. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate to the ALJ's consideration of the VA medical records.

On January 27, 2006, the VA determined that the plaintiff was 100% disabled as of June 5, 2002, due to PTSD and IBS. ([Doc. 6-7] at 17-23). In early 2005, both Dr. Meyer and Mr. Beightol assigned the plaintiff a GAF score of 35. ([Doc. 6-8] at 9; [Doc. 6-7] at 34). Nevertheless, the ALJ found that based in part upon the plaintiff's lack of medical treatment or medications and daily activities, the plaintiff was not disabled. ([Doc. 6-2] at 12-19). The plaintiff argues that the ALJ erred by ignoring the VA's 100% disability rating and a GAF score of 35. This Court disagrees.

With regard to the VA's disability rating, this Court notes that a determination made by any other governmental agency that an individual is disabled is not binding on the Commissioner, who must make a disability determination based upon social security law. See 20 C.F.R. § 404.1504. Moreover, "the Department of Veterans Affairs requires less proof of disability than the Social Security Administration does." *Allord v. Barnhart*, 455

---

[1]Moreover, the Court notes that the ALJ accounted for the plaintiff's social limitations in her RFC assessment. Specifically, the ALJ stated that the plaintiff's work "must involve limited, less than occasional, contact with the public." ([Doc. 6-2] at 14).

F.3d 818, 820 (7th Cir. 2006). As such, this Court cannot conclude that the ALJ erred by not attributing dispositive weight to the VA's 100% disability rating.

As for the GAF scores of 35, this Court notes that the Social Security Administration has stated that it does not "endorse" the use of the GAF scale "in the Social Security and SSI disability programs," explaining that the scale "does not have a direct correlation to the severity requirements in [its] mental disorder listings." 65 Fed. Reg. 50746-01, 50746-65 (2000); *see also* **Power v. Astrue**, 2009 WL 578478, *8 (W.D. Pa. March 5, 2009) (stating that "[u]nder Social Security rules, a claimant's GAF score is not considered to have a direct correlation to the severity requirements of the Administration's mental disorders listings") (internal quotation omitted). Thus, like a VA disability rating of 100%, a claimant's GAF score will not be dispositive for an ALJ tasked with making a disability determination. Perhaps more significantly, the ALJ here provided sufficiently specific and legally proper reasons for rejecting the opinions of Mr. Beightol, who had assigned the plaintiff a GAF score of 35.

Therefore, this Court cannot conclude that the ALJ's failure to adopt the VA's disability rating of 100% and the plaintiff's GAF score of 35 necessitates a finding that his decision is unsupported by substantial evidence. Accordingly, this Court agrees with the magistrate judge that the ALJ properly considered the plaintiff's VA medical records.

### E.    ALJ's Formulation of VE Hypothetical

Finally, the plaintiff asserts that the ALJ's VE hypothetical is unsupported by substantial evidence. The magistrate judge rejected this assertion. The plaintiff objects to the magistrate judge's conclusion. For the reasons set out below, and those more fully stated in the R&R, this Court **OVERRULES** the plaintiff's Objections insofar as they relate

to the ALJ's VE hypothetical.

The regulations define a claimant's RFC as "the most [a claimant] can still do despite [his or her] limitations." See 20 C.F.R. § 1545(a)(1). In assessing a claimant's RFC, an ALJ will consider "all of the relevant medical and other evidence," such as "any statements about what [the claimant] can still do that have been provided by medical sources . . .." § 404.1545(a)(3). This includes statements about the claimant's ability to "perform certain physical demands of work activity, such as sitting, standing, [and] walking . . .." § 404.1545(b). Upon formulating a claimant's RFC, the ALJ must determine whether a significant number of jobs exist in the national economy that have requirements which the claimant is able to meet despite his or her RFC. See § 404.1566(b). In so determining, the ALJ may use the services of a vocational expert, who may offer expert testimony in response to a hypothetical question about whether a person with the claimant's RFC can meet the demands of his or her past relevant work or other suitable work in the national economy. See §§ 404.1560(b, (c), and 404.1566(e). In the Fourth Circuit , an ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 1999 WL 7864, *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)).

In his Objections, the plaintiff argues that the ALJ's VE hypothetical is unsupported by substantial evidence because it did not account for his memory deficiencies. ([Doc. 15] at 2). This Court disagrees and finds that, in exercising her great latitude, the ALJ clearly accounted for the plaintiff's mental limitations, including memory deficiencies, by requiring that the work be "unskilled and involve routine/repetitive simple tasks and instructions . .

.." ([Doc. 6-2] at 14). Accordingly, this Court agrees with the magistrate judge that the ALJ properly accounted for all of the plaintiff's credible mental limitations in formulating the VE hypothetical.

IV. **Conclusion**

Upon careful consideration, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 14]** should be, and hereby is, **ADOPTED**. Further, the plaintiff's Objections **[Doc. 15]** are **OVERRULED**. Therefore, this Court **ORDERS** that the plaintiff's Motion for Judgment on the Pleadings **[Doc. 8]** is hereby **DENIED** and the defendant's Motion for Summary Judgment **[Doc. 10]** is hereby **GRANTED**. As such, the decision of the ALJ is hereby **AFFIRMED**. Accordingly, the Court hereby **ORDERS** that this matter be **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: October 26, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE